UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FLOYD ESKRIDGE,

      Plaintiff,

  v.

HMD TRUCKING, INC.,

      Defendant.

No. 24 CV 12437

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Floyd Eskridge worked as a truck driver for defendant HMD Trucking, Inc. He alleges that HMD Trucking violated the Illinois Biometric Information Privacy Act by collecting and storing his facial-geometry scans through cameras installed in trucks. HMD Trucking moves to dismiss the complaint. For the reasons discussed below, the motion is denied.

**I.    Legal Standards**

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, disregarding legal

conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

Preemption is an affirmative defense, and the plaintiff is not required to plead around it. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Dismissal under Rule 12(b)(6) is appropriate only when the plaintiff has pleaded himself out of court. *Id.*

## II.    Facts

Floyd Eskridge worked as a truck driver for HMD Trucking. [1-1] at 10 (¶ 14).[1] HMD Trucking installs driver-facing cameras in every truck cab. *Id.* ¶ 13. The cameras allow the company to remotely monitor its drivers. *Id.* ¶ 15. Eskridge alleges that the cameras collect and store drivers' biometric information by scanning their facial geometry. *Id.* ¶ 16. The company never disclosed the collection, storage, or use of such information, and Eskridge never gave his written consent. *Id.* ¶¶ 18–22. Eskridge alleges that the company violated Sections 15(a) and (b) of the Illinois Biometric Information Privacy Act. *Id.* ¶¶ 28–29; 740 ILCS 14/15(a), (b).

Eskridge filed a putative class action in the Circuit Court of Cook County, and HMD Trucking removed the action to this court under the Class Action Fairness Act.[2] [1]; 28 U.S.C. §§ 1332(d), 1441, 1446.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's amended state-court complaint, [1-1] at 8–16.

[2] A court has subject-matter jurisdiction over state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), if "(1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant; and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Roppo v. Travelers Com. Ins.*

**III. Analysis**

Illinois's Biometric Information Privacy Act regulates a private entity's collection, use, and storage of biometric information. 740 ILCS 14/5. "Biometric information" includes any information "based on an individual's biometric identifier used to identify an individual." *Id.* § 14/10. A "scan of hand or face geometry" is a "biometric identifier." *Id.* Private entities that possess biometric identifiers or information must develop and make publicly available a written policy with a retention schedule and guidelines for permanently destroying that information. *Id.* § 14/15(a). Private entities that collect or capture an individual's biometric information must disclose the collection or storage of the information in writing; specify the purpose and length of its collection, storage, and use; and receive a written release, which in the case of employers, can be executed by an employee as a condition of their employment. *See id.* §§ 14/10, 15(b).

HMD Trucking argues that the Federal Aviation Administration Authorization Act preempts Eskridge's BIPA claim, and alternatively, facial scans of drivers are not the kind of "biometric identifiers" protected by BIPA.[3] [7] at 5; [14] at 8.

---

*Co.*, 869 F.3d 568, 578 (7th Cir. 2017). CAFA jurisdiction is satisfied because the proposed class includes at least 1,568 drivers; minimal diversity is satisfied because a putative class member is a citizen of Pennsylvania and defendant is a citizen of Illinois; and the amount in controversy alleged exceeds $5,000,000. [1] ¶¶ 10–13 (putative class member resides in Pennsylvania and holds a commercial driver's license issued by Pennsylvania); [1-3] ¶¶ 2–4; *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010) (finding that a plaintiff's driver's license and other evidence of residence was sufficient to establish domicile).

[3] Plaintiff alleges the unlawful collection and retention of his biometric information. That's enough to allege a concrete injury to establish Article III standing. *See Fox v. Dakkota*

A. **Protected Biometric Information**

The company says that Eskridge must allege that his facial scan can be used to identify him. [7] at 13. Otherwise, the scan is not a biometric identifier. *See Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1123 (9th Cir. 2024) (scans of face geometry are not covered by BIPA if they cannot identify a person). Eskridge alleges that cameras installed in each truck scanned each worker's facial geometry and allowed the company to associate the information with a particular worker. [1-1] at 10 (¶¶ 15–16). That's enough to plausibly suggest that the facial scans can be used to identify a person. *See Konow v. Brink's, Inc.*, 721 F.Supp.3d 752, 758 (N.D. Ill. 2024) ("If [defendant] collected [plaintiff's] facial scans to analyze his driving behavior, the obvious inference is that [defendant] could (and did) tie the scans to [plaintiff's] identity. How else would they use the scans to assess his performance?"). The statute does not require a defendant to have used biometric information or a biometric identifier to identify a person; only that the identifier is capable of identifying an individual. *See* 740 ILCS 14/10. The complaint suggests as much. Whether the type of facial scan here can actually do what plaintiff alleges remains to be seen, but no more needs to be pled.

Eskridge plausibly alleges that his facial scans are "biometric identifiers" subject to BIPA's protections.

---

*Integrated Sys.*, LLC, 980 F.3d 1146, 1155 (7th Cir. 2020) ("[A]n unlawful *retention* of a person's biometric data is as concrete and particularized an injury as an unlawful *collection* of a person's biometric data.") (emphasis in original).

B.    Preemption

Federal law preempts any conflicting state law. *Arizona v. United States*, 567 U.S. 387, 399 (2012). The Federal Aviation Administration Authorization Act of 1994 regulates the trucking industry. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013). The Act expressly preempts any state law or regulation "related to a price, route, or service of any motor carrier… with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). With narrow exceptions not raised by the parties here, *see id.* § 14501(c)(2), the scope of preemption is broad. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (interpreting similar provision under the Airline Deregulation Act); *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370–71 (2008) (applying interpretation of the ADA to the FAAAA). The party invoking preemption must show that a state "enacted or attempted to enforce a law" and the law "relates to [] rates, routes, or services either by expressly referring to them, or by having a significant economic effect on them." *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 458 (7th Cir. 2023) (internal quotation marks omitted). The scope of preemption is not limitless. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1051 (7th Cir. 2016). State laws that affect rates, routes, or services in a "tenuous, remote, or peripheral manner" are not preempted. *Id.* (quoting *Morales*, 504 U.S. at 390).

BIPA does not expressly reference carrier services, so the preemption analysis asks whether enforcement of plaintiff's claim would have a significant effect. *See Ye*, 74 F.4th at 459. HMD Trucking argues that enforcing the state statute would have a significant economic impact on its prices and services. [14] at 3. If BIPA is enforced against trucking companies, motor carriers like HMD Trucking "cannot attempt to

5

improve customer service—or public safety—by using cameras which use biometric information to monitor driving behaviors if the driver refuses to provide written consent under BIPA or gives consent and later revokes it." [14] at 4. Defendant also maintains that obtaining written consent, choosing between drivers who have signed releases or not signed releases, or having to remove cameras for nonconsenting drivers would impose financial burdens passed on to consumers through higher prices. *Id.* Eskridge responds that BIPA does not regulate how a motor carrier provides services for customers, but "how it behaves as an employer." [13] at 2. It does not compel a carrier to use biometric cameras, nor does it prohibit it; it only requires that a carrier make certain disclosures and obtain written consent. *Id.*

There is a material difference "between generally applicable state laws that affect the carrier's relationship with its customers and those that affect the carrier's relationship with its workforce." *Costello*, 810 F.3d at 1054. The former category falls "squarely within the scope of FAAAA preemption," whereas the latter category of laws that regulate a carrier's relationship with its workforce "are often too tenuously connected to the carrier's relationship *with its consumers* to warrant preemption." *Id.* (emphasis in original).

Enforcing BIPA's disclosure and consent provisions primarily affects defendant's relationship with its drivers rather than its customers. A law that "only indirectly affects prices by raising [labor] costs," has "too tenuous, remote, or peripheral" a connection to rates, routes, or services to establish preemption. *Id.* at 1055.

6

In *Kislov v. American Airlines, Inc.*, No. 17 C 9080, 2022 WL 846840 (N.D. Ill. Mar. 22, 2022), a court found that the Airline Deregulation Act preempted claims under BIPA challenging the airline's use of "voiceprints" to operate its customer service hotline. The customer service hotline was a type of airline "service," i.e., a bargained-for exchange between the airline and its customers, and BIPA's regulation of voice recognition software would necessarily involve "wholesale changes to [the airline's] customer service practices." *Kislov*, 2022 WL 846840, at *4–*5. Unlike the customers in *Kislov*, Eskridge brings BIPA claims arising from his employment with defendant rather than the company's interactions with its customers. *See Costello*, 810 F.3d at 1054; *Rowe*, 552 U.S. at 373 (federal law preempts "state regulation of the essential details of a motor carrier's system for picking up, sorting, and carrying goods—essential details of the carriage itself"). The state statute does not, for example, require carriers to offer a particular service or deliver goods in a particular manner. *See Rowe*, 552 U.S. at 373–76 (holding that the FAAAA preempted a state statute requiring state-licensed tobacco retailers to use a delivery service with recipient-verification measures). Nor does BIPA require carriers to use a particular system to monitor a driver's behavior while picking up or carrying goods.

Defendant also relies on *Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453 (7th Cir. 2023), where the court found that a common-law tort claim premised on a theory of negligent hiring against a freight broker following a highway accident was preempted by the FAAAA as a matter of law. The claim would have a significant economic effect on broker services because it would impose "a new and clear duty of

7

care on brokers, the breach of which would result in a monetary judgment." *Ye*, 74 F.4th at 459. There, the state-law tort claim affected the defendant freight broker's provision of services vis-à-vis its selection of motor carriers that transported shipments. Here, enforcing BIPA would not impose a new duty of care on carriers qua carriers. Eskridge's claims relate to defendant's obligations under BIPA as his employer, so they do not fall squarely under FAAAA's preemptive scope.

"[S]tate laws of general application that provide the backdrop for private ordering" typically regulate inputs, like labor costs, that "operate one or more steps away from the moment at which the firm offers its customer a service for a particular price." *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*, 697 F.3d 544, 558 (7th Cir. 2012). Generally applicable labor or employment laws are not categorically exempt from preemption. *Costello*, 810 F.3d at 1055. But employment decisions usually occur at an earlier step of the supply chain, and so, enforcing such claims often have only "incidental" effects on carrier services. *Id.* at 1054.

The substantive requirements that Eskridge seeks to enforce relate to retention and destruction of biometric information under Section 15(a) and informed consent under Section 15(b). *See id.* at 1056 (looking to the "substantive requirement" that prohibited deductions to couriers' pay without "express written consent"). Defendant doesn't explain how complying with Section 15(a)'s requirements would significantly impact its prices or services. But it raises a myriad of administrative and economic costs to comply with Section 15(b)'s informed consent requirement: using only those drivers who have signed a written release, sorting between

8

"unwilling" and "willing" drivers, removing or deactivating inward-facing cameras from certain trucks, and keeping a separate pool of vehicles without cameras. [7] at 9. It's not clear how obtaining drivers' consent would affect the company's ability to "improve customer service" or "public safety," apart from the consequences of removing cameras from trucks altogether (which the statute does not require). It's also not enough to merely gesture to the potential effects of enforcing state law on prices or services, the effect must also be significant. *See Costello*, 810 F.3d at 1056. At this stage, there's insufficient evidence in the record to find preemption as a matter of law. *See id.* (rejecting company's "parade of horrors" as to costs of complying with various other federal and state laws as a result of enforcement), *and Nationwide Freight Sys., Inc. v. Illinois Com. Comm'n*, 784 F.3d 367, 371 (7th Cir. 2015) (finding that carriers did not establish FAAAA preemption at summary judgment without evidence that document requests imposed by state law affected rates, routes, or services and plaintiffs did not allege that they did). Because defendant hasn't met its burden to show that enforcing BIPA would have a "significant effect" its prices or services, the motion to dismiss based on FAAAA preemption is denied.

## IV. Conclusion

Defendant's motion to dismiss, [6], is denied.

ENTER:

Manish S. Shah
United States District Judge

Date: May 30, 2025

9